# THE SPRINGFIELD MILLING COMPANY, RESPOND-ENT, v. LANE COUNTY, APPELLANT.

PUBLIC CORPORATIONS—NOT LIABLE UPON IMPLIED CONTRACTS.—Where work is done upon the streets of a city, liability does not follow from the fact that the streets are thereby improved, and such city thereby benefited. The enjoyment and use of such improvements constitutes no such evidence of acceptance as to create a liability against the corporation.

STATUTE—WHEN PEREMPTORY.—When a public body or officer has been clothed by statute with power to do an act which concerns the public interest, the execution of the power is a duty, and though the phraseology of the statute be permissive, it is nevertheless to be held peremptory.

COUNTY BRIDGES—HOW MUST BE REPAIRED.—Under the act of October 11, 1862, relating to the erection and repairing of county bridges, immediate repairs, called for by any emergency, are left to the discretion of the county judge, and may be done by private contract. All other repairs and the construction of new bridges must be done by contract let to the lowest bidder, unless, through the road supervisor, in the special cases provided for by the act of 1865.

APPEAL from Lane County.

The facts are stated in the opinion of the Court.

*Thompson & Fitch*, for Appellant.

*G. B. Dorris*, for Respondent.

By the Court, SHATTUCK, J.:

This is an action at law tried in the court below upon issues of fact before the court, without a jury. The findings of the court below are as follows:

"1. That, at the January term, 1874, of the County Court of Lane County, State of Oregon, said court, in the transaction of county business, made the following order, to wit:

"'In the Matter of Bridge across Willamette River at or near Springfield.—At this day, after consideration by the court, it is ordered that A. S. Powers be, and he is hereby appointed superintendent of the construction of a bridge across the Willamette River at or near Springfield, Lane County, Oregon, and is vested with the usual powers pro-

vided by law, subject to the following conditions, to wit: The said A. S. Powers, as such superintendent, is hereby authorized to let the contract for the construction of said bridge, stipulating that the contractors shall receive one-half of the contract price from Lane County, and the other half in subscriptions from citizens, with the express understanding that said Lane County is not to be responsible for the payment or collection of said subscription, nor, in any case, for the payment of any sum greater than one-half of the contract price for constructing said bridge; and A. S. Powers is to receive, for his services as such superintendent, in full satisfaction for the same, one hundred and fifty dollars; the said bridge to be on the plan of Smith's Patent Truss Bridge; the superintendent to be subject to the direction of the County Court.'

"2. That on the 4th day of March, 1874, said Powers entered into a contract on behalf of said Lane County, with the Pacific Bridge Company, to construct the bridge referred to in said order; that by said contract, said Pacific Bridge Company agreed to furnish the material for said bridge, except lumber for the aprons thereof, and construct the same, for which they were to receive, from said Lane County, the sum of five thousand three hundred dollars.

"3. That in August, 1874, said Powers purchased of the plaintiffs, for the defendant, the lumber for which this action is brought, and the same was used in the construction of the aprons to said bridge, with the knowledge and consent of the defendant herein.

"4. That the value of the lumber so purchased of plaintiffs and used by defendant, is $158.44.

"5. That, at the September term, 1874, of said County Court, the plaintiff presented his bill for the lumber above referred to, and said bill was disallowed, except eighty dollars, which the plaintiff refused to accept."

As conclusions of law the court found:

1. That the defendant, by accepting and using the lumber mentioned in the complaint, became liable to the plaintiff for the value thereof.

2. That the plaintiff is entitled to a judgment against the defendant for the sum of $158.44.

The plaintiff had judgment upon these findings and the defendant (Lane County) appealed.

The plaintiffs place their right to recover on the ground that the superintendent Powers made a contract for the lumber with plaintiffs which the defendant, by accepting the bridge and offering to pay part of the price of the lumber, ratified and adopted as the contract of the county. This amounts simply to an implied contract arising from alleged benefits received.

The general doctrine unquestionably is, that when one receives the benefit of another's work or property, he is bound to pay for the same, and this doctrine applies as well to corporations as to individuals in cases where there is no restriction imposed by law upon the corporation against making in direct terms a contract like the one sought to be implied; but where there exist legal restrictions which disable a corporation to agree in express terms to pay money, the law will not *imply* any such agreement against the corporation. (*Brady* v. *The Mayor*, 2 Bosworth, 173; *Zottman* v. *San Francisco*, 20 Cal. 102–105.)

This rule may sometimes work a hardship upon a contractor, who, without having considered whether the law has been complied with or not, has performed labor or furnished material for a public corporation, and expects compensation therefor, the same as if it had been done or furnished for a private individual. But, nevertheless, the authorities hold that a contractor, no less than the officers of a municipal corporation, when dealing in a matter expressly provided for by law, must see to it that the law is complied with. Where work is done without authority upon the streets of a city, liability does not follow because the streets may be improved thereby or their use continued. Such continued use constitutes no such evidence of acceptance as to create a liability against the corporation. (20 Cal. 107.)

We are of the opinion that the same rules of construction which apply to and control the charters of municipal cor-

porations, and the action of municipal officers, are applicable to counties and should control County Courts in the management of county business.

The question here now presented is whether or not the contract sued on is a matter expressly provided for by law, and, for that reason, subject to the principles and rules just announced. Counsel for the plaintiffs insist that it is not. He contends that the power conferred on the County Court to provide for the construction of bridges and to appropriate money therefor is a general power, and that the provisions of law, relative to the mode of proceeding, are merely directory and in no way restrict or control the discretion of the court in regard to the mode. Here is the gist of this whole case, and upon our construction of the law of this State, in this particular, the rights of the parties to this action depend.

The statutes of this State, relating to this subject, are as follows:

The act of October 11, 1862, § 870, subdivision 4, page 283, General Laws, 1872, provides that "the County Court has authority and power to provide for the erection and repairing, within the county, of public bridges upon any road or highway established by public authority."

The act of 17th October, 1862, designated as § 71, page 737, General Laws, provides that "the County Courts of the several counties in this State be, and they are hereby authorized to apply, in their discretion, any moneys in the county treasury, not otherwise appropriated, toward defraying the expense of the building or repairing bridges on any of the county or State roads within their respective counties."

Section 72, page 737, provides that "the County Court may appoint some suitable person to superintend the letting and building and repairing and receiving the bridge when done. When a bridge is to be built said superintendent shall put up three notices in the county at least twenty days prior to the time of letting such bridge, one of which shall be posted in the neighborhood where the bridge is to be built or repaired, which notice shall state the general

plan of said bridge and statement of the proposed repairs, also the time and place of letting the same, which shall be let to the lowest responsible bidder at public outcry, and when said bridge is completed the superintendent shall give the undertaker a certificate for the same, if in his judgment the bridge has been built or repaired according to contract, and make due report thereof to the County Court, which certificate shall be a voucher to the court to pay the money; *provided, however,* that whenever in the discretion of the county judge an emergency may require it he may authorize repairs without such notice."

The next section in the same act provides for the construction of bridges over streams forming the boundary-line between two counties, and is not quoted here at length, having no immediate bearing upon the question before us.

There is another provision (§ 40, page 29, Pamphlet Laws of 1865), as follows: "When it shall appear to the satisfaction of any County Court in this State, at any regular session thereof, by application of any supervisor in said county to the above-named court, that the construction of a bridge or bridges of ten feet span or more is required to be made on the public highways in his district, the court shall order that as soon as said bridge or bridges shall have been made of good sound timber of proper size, and put together in a good and substantial manner, and covered with sound plank at least two inches thick, and not less than twelve feet long, and well spiked down, shall cause to be paid to the said supervisor the sum equal to the original cost of the plank and spikes so used, which shall be applied in payment of the same out of any money in the county treasury not otherwise appropriated; or for want of money, county orders may be issued in place thereof; and any person subject to perform road labor shall perform the same upon any road in the district which the supervisor may designate in his notice to perform work on the road." This act has not been printed in the body of the compilation of our laws in 1872, but appears in a marginal note with some comments by the compilers. We may remark in passing that until some question is made in a proper mode, concerning the validity of this

act, this Court will treat it as one of the laws in force in this State; and, in any event, we hold the authoritative text of the laws to be the original acts. The functions of the compilers were "to collect these laws," not to write commentaries or deliver judgments.

The above-cited provisions are all the express provisions of the statutes relating to the subject of building and repairing bridges on the highways in this State. The act of 1865 last cited does not appear to be relied upon by plaintiff's counsel, and if it were, we should hold, upon the views we entertain of the general subject, that it would not strengthen the positions which plaintiff assumes. It is an act providing for a class of cases entirely different from the one before us. It provides for the appropriation of money at a regular term of the court to pay for material furnished and laid down upon a public bridge, upon the application and certificate of the road supervisor, an officer bound to faithfulness by the sanction of an oath and the obligations of a bond, which is not this case at all.

The proceeding under consideration must then have been authorized by the acts of 1862, above quoted, or it must fail as being unauthorized. To these acts attention is now directed.

It is to be observed that the agent or superintendent, Powers, not only failed to comply with the requirements of these acts, in respect to letting the contract for this lumber to the lowest bidder, but he also contravened the express conditions of the order appointing him. The order declared that Lane County was not by any act of the superintendent "in any case" to be made responsible for more than one-half of the contract price of constructing the bridge, but this superintendent undertakes to bind the county for the whole price of this lumber. It is suggested that the aprons were not a part of the bridge and not properly within the terms of the provision for making a contract for construction. If this is true, which is not conceded, then Powers was a mere stranger undertaking to buy lumber in the name of Lane County; and because he has laid it down upon the highway, and the public travel is thereby facilitated, he is

seeking to impose upon the county the obligation to pay for it. And if Powers could do this, every man in the county could do likewise and secure for himself, as well as the public, a plank road. The absurdity of such a position is manifest.

The act of Powers in purchasing this lumber, in the manner he did, was clearly unauthorized by any express provision of law or order of the County Court. If, however, we were to rest the matter upon the ordinary rules of principal and agent, this unauthorized act of the superintendent might be considered ratified by the county in allowing the lumber to be laid down in the bridge, and in the continued use of it as a part of the public highway.

The view, however, which we take of the statutes, precludes the application to this case of the ordinary rules of principal and agent, as well as of the rule of implied promise arising from benefits received.

In construing these statutes of 1862, the first point to be settled is the meaning and force of the word "may" in the first clause of § 72 (page 737), which says that "the County Court may appoint," etc.

There can be no question but that the County Court has been invested with this power of providing for the construction and repair of bridges, and of appointing a superintendent in such a case, for the public good, and that the construction and repair of bridges concerns the public interests. The public are also interested in having the public works done at the lowest price, so they be well done, and surely no one can doubt the wisdom or importance of requiring the superintendent to advertise for bids, and to let the contract "to the lowest responsible bidder at public outcry." This mode of proceeding prevents jobbery and favoritism, and such was the manifest intention of this provision of the statute. This being so, we hold that *may* in this statute means *must*, upon the principle recognized by good authority that, when a public body or officer has been clothed by statute with power to do an act which concerns the public interest, the execution of the power is a duty, and though the phraseology of the statute be permissive, it is nevertheless to be held

peremptory. (Smith's Com. 727–729; Sedgwick Stat. and Const. Law, 438.)

Or, if that doctrine be deemed doubtful as a general rule, we still hold that the true intent of the Legislature, as expressed by this statute, is to provide in all cases of constructing or repairing bridges (when the act of 1865 is not followed) an imperative rule of proceeding for the County Court. The act first contains a general grant of power over the subject; then an authority is given to appoint a superintendent; then it is provided that "when a bridge is to be built" the contract therefor shall be let upon public notice and "public outcry," to the lowest responsible bidder. There is also a proviso allowing the *county judge,* in cases of emergency, to authorize repairs without public notice. Here is provision made for the whole matter. Immediate repairs, called for by any emergency, are left to the discretion of the county judge, and may evidently be done by private contract. All other repairs and the construction of new bridges must be done by contract let to the lowest bidder, unless through the road supervisor, in the special cases provided for by the act of 1865.

This view is confirmed by the consideration that the County Court, in the exercise of the jurisdiction pertaining to county commissioners to transact county business, has only such powers as the statute has given it, including also such implied powers as are necessary to carry into effect the powers expressly granted. And it seems to be the settled doctrine, sanctioned by the cases cited on the argument, that when a statute confers upon an inferior tribunal a power, and, at the same time, prescribes a mode of exercising that power, the *mode* becomes the *measure* of the power, and such mode must be substantially, if not strictly, followed.

Looking at this case from the point of view here presented, the transaction pertaining to this lumber is one outside of any of the modes of proceeding prescribed for the County Court, and, being outside of the mode, is outside of the jurisdiction. The county had no power to make such a contract with the plaintiffs, as is alleged to have been made

by Powers, and, having no power to make it originally, it could not ratify any unauthorized act of Powers in respect to the same matter, and for this reason no implied promise or obligation can be raised and imposed upon the county in the matter.

It follows, from these views, that the conclusion of law announced by the court below was incorrect, and the judgment must be reversed.