(No. 1710, July 13, 1914)

C. C. CATRON, Appellant, vs. O. N. MARRON, State Treasurer, Appellee.

### SYLLABUS BY THE COURT.

1. Chapter 58, Laws of 1912, examined and held not to be violative of Section 29 of Article IV, and Section 8 of Article IX, of the Constitution.

P. 207

2. Where a public officer or body is clothed with power in permissive form to perform an act in which the interests of the public are concerned, the permissive language used will be construed as mandatory.

P. 205

3. An act which authorizes the contracting of a debt by the State and which appropriates the money to pay interest and provide a sinking fund to pay the same out of a fund which is required to be raised by an annual tax is valid, notwithstanding the fund is to be raised under an act other than the one which authorizes the debt, and is a substantial compliance with the requirements of Section 8 of Article IX of the Constitution.

P. 209

4. The State Treasurer is not required to exact interest from banks in which he may, of his own volition, deposit

the public moneys of the State. But when such moneys are so deposited and do earn interest, the interest is the property of the State, and the State Treasurer has no power to contract to award any portion thereof to any person whomsoever.

P. 210

Appeal from District Court, Santa Fe County. David J. Leahy, Presiding Judge. Reversed and Remanded.

CATRON & CATRON, for Appellant.

No bids conform to requirements of Chap. 58 of Laws of New Mexico of year 1912. Sec. 4, Chap. 58, L. 1912.

Chap. 58 unconstitutional. Art. 4, Sec. 29, Const. of New Mexico; Art. 9, Sec. 8, Const. New Mexico; Art. 4, Sec. 29 Id.; Sec. 5, Chap. 58, L. 1912. -

FRANK W. CLANCY, Attorney General, for Appellee.

Bid of Kelly & Kelly is in full of compliance with statute. Chap. 3, L. 1907.

Statute meets constitutional requirement as to provision for interest in Sinking Fund. Chap. 42, L. 1909, Sec. 8; Sec. 5, Act 1912; Sec. 211, 5th Ed., Dillon on Mun. Corp.

OPINION.

PARKER, J.—The "State Highway Bond Act," Chapter 58, Laws 1912, was approved June 10, 1912. It contained a provision for its submission to the people at the succeeding November election, which was done, and the same was approved. The favorable result of the election was duly announced by proclamation of the Governor, in accordance with Section 8 of the Act, and it thereupon became the duty of the State Treasurer, under Sec. 2 of the Act, to prepare for sale, five hundred suitable bonds of the State, of the denomination of $1,000 each. By Section 4 of the Act, the State Highway Commission is au-

thorized to request the Governor to direct the State Treasurer to sell such number of said bonds as may be required for the purposes intended. The said Highway Commission requested the Governor to direct the State Treasurer to sell the entire authorized issue of $500,000 of bonds, which was done, and the State Treasurer proceeded to advertise for bids for the same. Bids were received, whereupon this complaint was filed, asking for an injunction against the State Treasurer, restraining him from accepting any bid made for said bonds at said proposed sale. A demurrer was interposed to the complaint and sustained by the court below, and final judgment of dismissal was entered. Plaintiff thereupon appealed.

The record presents two questions:

1. Whether Chapter 58, Laws 1912, is not invalid as violative of Section 29 of Article IV and Section 8 of Article IX of the Constitution.

2. Whether, assuming the act to be valid, any of the bids received for said bonds were valid under the terms of the Act.

1. The first question rests upon very narrow ground. Sec. 29 of Article IV of the Constitution is a general limitation upon legislative power and provides:

"No law authorizing indebtedness shall be enacted which does not provide for levying a tax sufficient to pay the interest, and for the payment at maturity of the principal."

Section 8 of Article IX is more specific, and provides:

"No debt, other than those specified in the preceding section shall be contracted by or on behalf of this state, unless authorized by law for some specified work or object; which law shall provide for an annual tax levy sufficient to pay the interest and to provide a sinking fund to pay the principal of such debt within fifty years from the time of the contracting thereof."

The debts specified in the preceding section are:

"The state may borrow money not exceeding the sum of two hundred thousand dollars in the aggregate to meet casual deficits or failure in revenue, or for necessary ex-

penses. The state may also contract debts to suppress insurrection and to provide for the public defense."

The State Highway Bonds are clearly not within the exception specified in Section 7, *supra*.

The objection to the validity of Chapter 58, Laws 1912, is based upon the proposition that it makes no provision for the levy of an annual tax sufficient to pay the interest and to provide a sinking fund to pay the principal within fifty years.

The argument of the Attorney General, however, is that the Act does, at least indirectly, make provision for the levy of an annual tax sufficient to pay the interest and provide the necessary sinking fund. The argument is as follows:

By Section 8, of Chapter 42, Laws of 1909, the then Territorial Roads Commission was authorized to cause to be levied annually, as other taxes are levied, a tax of not to exceed one mill upon the taxable property in the Territory.

By Chapter 54, Laws 1912, all of the powers of the Territorial Roads Commission were transferred to the State Highway Commission. That the concluding clause of Section 4 of Chapter 58, Laws 1912, is a legislative construction of Chapter 42, Laws 1909, and that thereby the one mill levy which was permissive by the Territorial Roads Commission, is now imperative by the State Highway Commission. The provision relied upon is as follows:

"Provided; That the expenditure of the proceeds derived from the sale of said bonds shall be annually apportioned among the several counties of the state upon the basis of the amount annually contributed by each county to the State Road Fund as proceeds of the one mill levy required by Chapter 42 of the Acts of the Thirty-eighth Legislative Assembly of New Mexico."

The Attorney General calls attention to the fact that this levy of one mill is much more than sufficient for the purpose required, and that it will produce upon the basis of the last annual assessment between ninety and one hun-

dred thousand dollars annually, while only twenty thousand dollars will be required each ·year until 1919 for interest, and thereafter only forty thousand dollars per year for interest and sinking fund.

He further calls attention to Section 5, Chapter 58, Laws 1912, which provides, among other things, as follows:

"PROVIDED, HOWEVER, that at any time when there shall be an insufficient amount in said Road Fund to pay the principal and interest on the bonds as aforesaid, then and in that event a special levy shall be made to provide for the payment of the said principal and interest as the same become due and payable."

The argument of the Attorney General we deem faulty in part. The legislature, in Section 4, was not dealing with the proposition of levying an annual tax for the payment of the bonds, but was providing that the proceeds ·of the bonds should be distributed and applied to roads in counties in proportion to the amount of taxes paid by ·each of them respectively, under the one mill levy provided for by the Act of 1909.

It was providing for the distribution of the proceeds ·of the bonds among the counties, not for the raising of the money by taxation to pay the bonds and interest. Section 5 of the Act, however, throws more light upon the ·subject. The whole section, and especially the portion ·quoted, contemplates by its terms that there shall be at ·all times a road fund, out of which the interest on the bonds may be paid, and the principal be reduced from time to time, as it matures. It was certainly contemplated that this fund should be raised by the levy of the one mill ·tax. It could not have been contemplated that this interest and these installments of principal should be paid ·out of the very proceeds of the bonds themselves. That it intended there should be a levy annually, under the Act of 1909, of the one mill upon the taxable property of the State, out of which should be paid the accruing interest and installments of principal as they matured, and that in case of deficiency in said fund, a special tax might be levied for such purposes is apparent. The action of

the legislature in Section 5 of the Act, which, aside from the proviso quoted, makes direct appropriation out of the road fund to pay interest and installments of principal as they accrue, amounts to a legislative interpretation that the fund will be available, and that, consequently, the duty to cause the levy of the one mill tax by the State Highway Commission is mandatory, which interpretation, as we shall see, is correct.

In this connection it is to be observed that the State is thoroughly committed to the policy of the construction and maintenance of a system of public highways, under the supervision of the State. This policy was inaugurated in 1905, by Chapter 7, Laws 1905, and has been constantly adhered to down to the present time. The question of the issue of the bonds under examination in this case, was submitted to a vote of the people, and by them approved. The question of good roads in the State and the raising of money to construct and maintain them, is a public question in which all the people are concerned.

Section 8, Chapter 42, Laws 1909, as before seen, is permissive and not mandatory in form as to the levy of the one mill tax. The language used is: "The said roads commission is hereby authorized and empowered to cause to be levied annually as other taxes are levied in the Territory, a tax of not to exceed the sum of one mill upon each and every dollar of taxable property in the Territory." Under such circumstances the words "authorized and empowered" are to be construed as "authorized and required."

This doctrine is stated in 36 Cyc. 1159, as follows:

"Statutes which confer upon a public body or officer power to act for the sake of justice, or which clothe a public body or officer with power to perform acts which concern the public interests or the rights of individuals, although the language is permissive merely, will be construed as imposing duties rather than conferring privileges, and will therefore be regarded as mandatory."

Mr. Sutherland states the doctrine as follows:

"Such words, when used in statute, will be construed as mandatory for the purpose of sustaining and enforcing

rights, and not for the purpose of creating a right or determining its character; they are peremptory when used to clothe a public officer with power to do an act which ought to be done for the sake of justice, or which concerns the public interest or the rights of third persons." 2 Lewis' Sutherland Stat. Const., Sec. 636.

In Tarver vs. The Commr's Court of Tallapoosa, 17 Ala. 527, it is said:

"It is true the language of the act is, that it shall be lawful for the commissioner's court to levy a tax, etc.; but it is well settled that the word may, or the words it shall be lawful are peremptory when used in a statute where the public or an individual has a right *de jure,* that the powers conferred by the act should be exercised."

In Hugg vs. Camden, 39 N. J. L. 620, the statute provided "that it shall and may be lawful for the city council to cause the lands, or so much thereof as they may think proper, to be sold at public auction." The city council having refused to act, mandamus was brought against them and sustained. The court said:

"It is the settled construction, that where a public or municipal corporation, or body, is invested with power to do an act which the public interests require to be done, and has the means for its complete performance placed at its disposal, not only the execution, but the proper execution of the power may be insisted on as a duty, though the statute conferring it be only permissive in terms."

In Springfield Milling Co. vs. Lane County, 5 Ore. 271, it is said:

"When a public officer or body has been clothed by statute with power to do an act which concerns the public interest, the execution of the power is a duty and though the phraseology of the statute may be permissive, it is nevertheless to be held peremptory."

In The Mayor and C. C. of Baltimore vs. Marriott, 9 Md. 160, 174, it is said:

"It is a well settled principle that when a statute confers a power upon a corporation to be exercised for the public good, the exercise of the power is not merely dis-

cretionary but imperative, and the words 'power and authority,' in such case, may be construed duty and obligation." See also, Ralston vs. Crittenden, 13 Fed. 508; People vs. Otsego County Supervisors, 51 N. Y. 401; Rock Island County Supervisors vs. U. S., 4 Wall 435; State vs. Laughlin, 73 Mo. 443.

We have, then, a case where there is a statute, permissive in form, but mandatory in effect, whereby a public body (the State Highway Commission), is required to make an annual levy of a tax of not to exceed one mill, to be placed in the Road Fund, and where the legislature has authorized the contracting of a debt by the State and has appropriated out of said road fund sums sufficient to meet interest and sinking fund to pay said debt. Under such circumstances the sole objection to the act is narrowed to the highly technical one that the provision for taxation to raise the money for interest and sinking fund is not contained in the act itself which authorizes the bonds, but is contained in a previous act.

The objection is not to be maintained. The act does "provide for an annual levy" by appropriating the necessary money out of the fund which must be annually collected by taxation for this and other purposes, although this is to be done under a former act. If the act providing for the tax had been passed at the same session of the legislature with the act authorizing the bonds and appropriating the money out of the fund to be raised by the tax, we assume that no one would be heard to say that provision had not been made for the payment of the bonds, within the requirements of the Constitution. We see no substantial difference between the case at bar and the one supposed.

We therefore hold that Chapter 58, Laws 1912, is not violative of the requirements of the Constitution.

In this connection we do not wish to be understood as saying that the State Highway Commission is required to levy annually the whole of the one mill tax. All that we decide is that it is required to levy such an amount, up to one mill, as may be required to meet the demands to be made upon the fund to be collected thereby.

2. It appears that the State Treasurer received sixteen bids for these bonds. Fifteen of them are conditional and do not provide for the payment of the full amount of the bonds and accrued interest at this time to the State Treasurer; but provide for the payment of various sums at this time and the deposit in certain named banks of the remainder of the purchase price, and the delivery to the State Treasurer of certificates of deposit therefor, payable at certain specified times in the future, without interest. These bids are clearly not in accord with the express provisions of the act, and the Attorney General does not pretend to justify them. Section 4, Chapter 58, Laws 1912, among other things, provides:

"The Treasurer shall not accept any bid which is less than the par value of the bond, plus the interest which has accrued thereon between the date of sale and the last preceding interest maturity date." * * * * *

"Immediately after such sale of bonds, the Treasurer shall pay into the state treasury and cause to be placed in the State Road Fund the total amount received for said bonds, except such amount as may have been paid as accrued interest thereon."

It would be impossible for the State Treasurer to comply with these provisions if he were to accept these bids, and they may be dismissed from further consideration, as invalid.

The sixteenth bid, however, raises a different question This bid is for the full par value of the bonds with accrued interest. The sole objection urged against the acceptance of the bid is that there is an alleged oral agreement between the bidder and the State Treasurer to the effect that the State Treasurer, after he has received and paid into the state treasury the proceeds of the sale of said bonds, as required by the act, he will deposit in his name, as State Treasurer, in banks in New Mexico, to be agreed upon and selected by him and the bidder from a list to be furnished by the said bidder, such sums of money out of said fund as are not immediately needed by the State Highway commission; such sums to be deposited on time deposits, bearing such rate of interest as the said bidder

may be able to obtain; that said deposits are to run for such periods as may be agreed upon by the State Highway Commission and so as not to interfere with its needs for funds for carrying on its road work; that out of the interest derived from the said time deposits the said bidder is to receive such sum as may be agreed upon by the bidder and the State Treasurer, and that the State should receive the balance of said interest, if any there be.

It is contended that this oral agreement between the bidder and the State Treasurer attaches a condition to this bid and renders the same open to objection. It is not alleged that the bid was conditioned upon the oral agreement, but it is alleged that the oral agreement is supplemental to the bid. If it is supplemental to the bid it becomes a part of the contract between the parties. If it were in writing it would be plain that the bid and agreement would form one complete contract. There may occur to the mind reasons why this oral agreement is not legally binding upon the State Treasurer, but in a case of this kind, involving the conduct of a state official, and in which he cannot be put in the position of making an agreement and then failing to carry it out, we deem **3** it proper to treat the agreement as binding upon him in so far as he has power to make such a contract. The question is, then, can such a contract be made?

We deem the provisions of Section 10 of Article VIII of the Constitution to be controlling. It provides:

"All public moneys not invested in interest-bearing securities, shall be deposited in national banks in this State or in banks or trust companies incorporated under the laws of the state, and the interest derived therefrom shall be applied in the manner prescribed by law."

Here is declared a general policy in regard to the public funds of the State. If they are not invested, they must be deposited in banks and the interest derived therefrom is to belong to the State. It is true, there is no law of the State, at least none has been called to our attention, requiring the State Treasurer to exact interest from banks upon making deposits with them, when done on his own

motion. We assume he might deposit the proceeds of these bonds in banks of his own choosing, and allow the use of them without charge of interest. But when these moneys of the State are deposited, and do earn interest, the interest becomes the property of the State. If this interest does not become the property of the State, then the provision "applied in the manner prescribed by law" in the section of the Constitution becomes meaningless. If the interest does not become the property of the State, then it cannot be disposed of by law.

As before stated, there is no law requiring the State Treasurer to exact interest under these circumstances. But the implication is clear and conclusive from the section of the Constitution quoted, that public moneys deposited in banks shall draw interest. And the State Treasurer who fails to obtain the same when he can, will certainly violate the spirit, if not the letter, of the Constitution.

The fact that no provision of law now exists for the application of such interest, earned under these circumstances, does not militate against this conclusion. The money may remain in the treasury until applied as the law may direct.

It follows that the State Treasurer has no power to make a contract to pay to any one any portion of the interest paid by a depositary on the public moneys of the State. The agreement to do so is illegal and void.

What has been said in regard to exacting interest by the State Treasurer has no application, of course, to deposits in banks under Section 255, C. L. 1897, and acts amendatory thereof, which requires the payment of interest.

In reaching this conclusion we are not unmindful of the importance of the same and the interest which the people have in the development of the roads of the State. If these bonds could be legally sold, it should be done. If by any course of sound reasoning this bid could be held valid, the Court would be glad to adopt the same. But we have searched in vain for any principle of law upon which the same can be justified. The remedy lies with the legislative department by providing for the issu-

ance of bonds bearing interest at a rate sufficiently large to attract investors. These bonds, it is urged and admitted by the demurrer, cannot be sold without resort to some such subterfuge as the one disclosed in this case.

It is needless to say that the officers concerned have been actuated by the highest motives in attempting to sell these bonds, thereby to subserve the expressed desire of the people of the State. But the action is not legally justified.

For the reasons stated, the judgment of the lower court will be reversed and the cause remanded with instructions to overrule the demurrer interposed, and proceed with the cause in a manner not inconsistent with this opinion, and, it is so ordered.