839 P.2d 645

Nieves GALLEGOS, as Personal Representative of the Estate of Barbara D. Gallegos, Joshua Nieves Gallegos, and Baby Doe Gallegos, and Elmer Vigil, as Personal Representative of the Estate of Judy Ann Vigil, Plaintiffs–Appellants,

v.

Dennis TRUJILLO, Larry Trujillo, Board of County Commissioners of Mora County, Mora County Sheriff's Department, State Corporation Commission, Martin Vigil, former New Mexico State Chief of Police, "Doe" Corporation, and Does 1–10, Defendants–Appellees.

No. 12902.

Court of Appeals of New Mexico.

Aug. 5, 1992.

Certiorari Denied Sept. 10, 1992.

Jeff Romero, Albuquerque, for plaintiffs-appellants.

David M. Houliston, Butt, Thornton & Baehr, P.C., Albuquerque, for defendant-appellee Bd. of County Com'rs of Mora County.

OPINION

DONNELLY, Judge.

Plaintiffs Nieves Gallegos, as Personal Representative of the Estate of Barbara D. Gallegos, Joshua Nieves Gallegos, and Baby Doe Gallegos, and Elmer Vigil, as Personal Representative of the Estate of Judy Ann Vigil, appeal from an order granting summary judgment and dismissing their wrongful death claims against Defendant Board of County Commissioners of Mora County (Board). The central issue presented on appeal is whether the Board was legally obligated to provide ambulance services in Mora County and whether its

alleged negligent breach of such duty proximately contributed to the deaths of Plaintiffs' decedents. We hold that the Board's immunity from suit was not waived and affirm the district court's order.

## FACTS

This case arises out of an automobile collision which occurred in the early evening hours of February 14, 1986, near the town limits of Mora, in Mora County. The vehicle in which Plaintiffs' decedents were riding attempted to make a U-turn and was struck by a pickup truck driven by Defendant Dennis Trujillo. Plaintiffs' second amended complaint alleged, inter alia, that the Board "had a legal duty * * * to maintain ambulance service" to the residents of Mora County, including decedents; that the Board was "negligent in failing to provide ambulance service"; and that as a "direct and proximate result of the negligence" of the Board, Plaintiffs' decedents died.

The Board's answer denied the existence of any duty or obligation and denied any negligence or that its acts or omissions proximately caused the deaths of decedents. The evidence was conflicting as to whether the delay in transporting decedent, Barbara D. Gallegos, from the accident scene to the hospital in Las Vegas proximately contributed to her death. Dr. Cordell Halverson testified by deposition that within a reasonable medical probability, delay in reaching the hospital was a contributing factor in the deaths of Barbara D. Gallegos and her unborn child.

It was undisputed that the Board had assisted in providing ambulance services for Mora County since 1977 and had leased an ambulance owned by the Board to Mora Valley Community Health Services, Inc. (MVCHS), a private nonprofit corporation, which operated a clinic and ambulance services in Mora County. During 1985 the Board provided approximately $4,000 in funding to MVCHS to operate the ambulance service. Prior to the fiscal year beginning July 1, 1985, MVCHS notified the Board that the sum of $4,000 would be insufficient to permit it to continue operation of the ambulance service, and in December 1985 MVCHS advised the Board that ambulance services in the county would be terminated unless additional funds were made available. On January 3, 1986, MVCHS stopped providing ambulance services. In an attempt to restore such service, several weeks later on January 28, 1986, the Board obtained approval for additional funding from the New Mexico Department of Finance and Administration; however, the Board did not obtain a warrant authorizing payment of the funds until March 6, 1986.

The Board moved for summary judgment and dismissal of Plaintiffs' claims against it, contending, among other things, that it was entitled to dismissal as a matter of law because the Board had no legal duty or obligation to provide ambulance services at the time of the accident and that it was immune from liability for Plaintiffs' claims under the Tort Claims Act, NMSA 1978, §§ 41–4–1 to –27 (Repl.Pamp.1989). Following a hearing, the district court granted the Board's motion and denied Plaintiffs' motion for reconsideration.

## ISSUE OF DUTY

Plaintiffs argue that the Board had a legal duty under NMSA 1978, Section 5–1–1(A) (Repl.Pamp.1992) to provide ambulance services and its breach of such duty proximately contributed to the deaths of decedent Barbara D. Gallegos and her unborn child. Section 5–1–1 provides in applicable part:

*A municipality or county may:*

A. provide ambulance service to transport sick or injured persons to a place of treatment in the absence of an established ambulance service only as authorized by the state corporation commission;

B. contract with other political subdivisions or with private ambulance services for the operation of its ambulance service[.] [Emphasis added.]

Plaintiffs contend that even though the language underscored above appears facially permissive, because the statute invests the Board with authority to perform acts which are so closely related to the furtherance of the public welfare and interests, the term "may" should be interpreted

to be mandatory. In support of this contention, Plaintiffs rely upon *State ex rel. Robinson v. King*, 86 N.M. 231, 522 P.2d 83 (1974), and *Catron v. Marron*, 19 N.M. 200, 142 P. 380 (1914). In *Robinson* the court interpreted the language of a statute providing that the governor *"may* amend the proclamation" calling for a statewide primary election to be mandatory rather than discretionary. 86 N.M. at 233, 522 P.2d at 85 (quoting NMSA 1915, § 3–8–15). The *Robinson* court held that "[w]hether words of statutes are mandatory or discretionary is a matter of legislative intent to be determined by consideration of the purpose sought to be accomplished." *Id.*

Similarly, in *Catron* the court held that the road commission and its successor, the state highway commission, had a mandatory obligation to levy an annual property tax sufficient to meet the state's obligations because of the issuance of highway bonds. The court construed the permissive language of the statute to be mandatory because such construction was necessary in order to sustain and enforce existing rights. 19 N.M. at 205–06, 142 P. at 382. The *Catron* court quoted with approval from *Springfield Milling Co. v. Lane County*, 5 Or. 265, 271–72 (1874), noting, " 'When a public officer or body has been clothed by statute with power to do an act which [intimately] concerns the public interest, the execution of the power is a duty and though the phraseology of the statute may be permissive, it is nevertheless to be held peremptory.' " 19 N.M. at 206, 142 P. at 382.

Where a county or political subdivision is confronted with a shortage of available revenues, the county is invested with discretion concerning the allocation of public funds. *See* NMSA 1978, § 4–38–18 (Repl.Pamp.1992). Moreover, under the Bateman Act, NMSA 1978, Section 6–6–11 (Repl.Pamp.1992), county commissioners are precluded under penalty of law from incurring an indebtedness or contracting for the payment of debts of "any kind" during the current fiscal year, which "at the end of such current year * * * cannot then be paid out of the money actually collected and belonging to that current year."

We note that Section 5–1–1 contemplates that there may not be a local established ambulance service. *See* § 5–1–1(D) (authorizing municipality or county to go to the scene of accidents outside its subdivision boundaries when requested "providing no local established ambulance service is available or if one exists, * * * [it is] inadequate * * *."). Section 5–1–1(D) would be meaningless if we were to interpret the statute to require every county and municipality to have an established ambulance service. Additionally, as noted by the Board, Section 5–1–1(B) contemplates that a county might arrange to have ambulance service provided from another county. This language indicates that a county is not required to have its own service. In fact, the Board alleged this is the situation in the present case. We conclude that Section 5–1–1 does not impose a mandatory duty on the county to provide an ambulance service.

Plaintiffs also argue that the decision in *Schear v. Board of County Commissioners*, 101 N.M. 671, 687 P.2d 728 (1984), supports their contention that the Board may be held liable in tort for a negligent failure of public officers to perform a mandatory duty. In *Schear* our supreme court held that peace officers had breached a mandatory duty imposed by NMSA 1978, Section 29–1–1 (Repl.Pamp.1990) by failing to timely respond to a call reporting a crime in progress and requesting assistance of law enforcement personnel. In light of our conclusion that Section 5–1–1 does not impose a mandatory duty on the Board to provide ambulance services, we do not consider *Schear* applicable to the facts of the present case.

Ordinarily, a holding that no duty existed as a matter of law would end our analysis. However, Plaintiffs appear to also argue that, once the county had undertaken to assist in providing ambulance services, it had a duty to continue. Plaintiffs assert that the Board's acts in contracting to provide ambulance services, in fact, amounted to the operation of such service under Sec-

tion 5-1-1(B) and under Section 41-4-9 of the Tort Claims Act. Plaintiffs also contend that Section 41-4-10 constitutes a waiver of immunity so as to authorize the filing of a negligence action against the Board in the present case. Section 41-4-10 provides:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees licensed by the state or permitted by law to provide health care services while acting within the scope of their duties of providing health care services.

Thus, Plaintiffs reason that the failure of the Board to continue funding the service constituted negligent operation or provision of the ambulance service. We disagree.

Section 41-4-2(A) of the Tort Claims Act provides in part that "[i]t is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act." Section 41-4-4(A) specifies that governmental entities or public employees are immune from tort liability "except as waived by Sections 41-4-5 through 41-4-12."

■ Plaintiffs additionally argue that Section 5-1-1(F) should be construed to provide an independent statutory waiver of governmental immunity. Plaintiffs reason that the language of the section conflicts with Section 41-4-2(A), which states that government bodies and employees "shall only be liable within the limitations of the Tort Claims Act." We construe the language relied upon by Plaintiffs in Section 5-1-1(F) as simply constituting a *bar* to personal actions against public employees. Subsection F of Section 5-1-1 states:

> [N]o personal action shall be maintained in any court of this state against any member or officer of a political subdivision or in execution of its orders under this section. In all such cases, political subdivisions shall be responsible. Any member or officer of the political subdivision may plead the provisions of this

section in *bar* of such action whether it is now pending or hereafter commenced. [Emphasis added.]

Section 5-1-1(F) recognizes that if a county elects to provide ambulance services, even though not mandatory, a tort claim may be prosecuted for injury or property damage arising out of the negligent operation of such service. Any such claim would be subject to the provisions of the Tort Claims Act. *See* § 41-4-2(A). The provisions of the Tort Claims Act, however, waive immunity from suit in tort for employees as well as the government bodies that employ them. *See* §§ 41-4-9; -10. In contrast to the provisions of the Tort Claims Act, under Section 5-1-1(F), if a county undertakes to provide ambulance services and a tort claim is filed alleging negligent operation of such service, the employee cannot be sued; rather, the governmental body is responsible. Although both Acts permit suit against the county for negligent acts, Section 5-1-1(F) restricts suit against an employee individually. To the extent the two statutes are conflicting, we need not resolve herein which statute controls because it is clear that under either statute the legislature did not intend to waive immunity of the Board from the claims asserted here.

Section 41-4-9 provides in applicable part that the immunity granted under the Tort Claims Act does not apply to "liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities."

Plaintiffs further argue that the Board's purchase of an ambulance, the leasing of such vehicle, and its agreement to assist MVCHS in providing such services constitutes the "operation" of a "hospital," "clinic," or adjunct services, including the furnishing of ambulance services, within the contemplation of Section 41-4-9. We think their arguments must fail.

■ Nothing in the Tort Claims Act or Section 5-1-1 discloses a legislative intent

to subject a county to tort liability based upon its failure or refusal to provide additional funding for ambulance services under the circumstances here presented. *See Gallegos v. State,* 107 N.M. 349, 758 P.2d 299 (Ct.App.1987) (cause of action under Tort Claims Act must fit into one of the exceptions to governmental immunity specified in the Act); *Pemberton v. Cordova,* 105 N.M. 476, 734 P.2d 254 (Ct.App.1987) (unless specific waiver of immunity is contained in Tort Claims Act, consent to sue may not be implied). Statutory provisions purporting to waive governmental immunity are strictly construed. *See Armijo v. Department of Health & Env't,* 108 N.M. 616, 775 P.2d 1333 (Ct.App.1989) (Tort Claims Act extends immunity for tort liability to governmental entity, except where immunity is waived under Sections 41–4–5 to –12 of the Act); *see also Martinez v. City of Cheyenne,* 791 P.2d 949 (Wyo. 1990); *cf. Methola v. County of Eddy,* 95 N.M. 329, 622 P.2d 234 (1980) (legislation in derogation of common law is strictly construed).

We conclude that funding decisions are not the types of decisions the legislature intended to include in the meaning of "operation" of a service under Sections 5–1–1, 41–4–9 or 41–4–10. Although no case has construed the meaning of the word "operation" as used in Section 5–1–1, this court has narrowly construed the term "operation" as used in the Tort Claims Act. *See Armijo v. Department of Health & Env't; see also Adams v. Japanese Car Care,* 106 N.M. 376, 743 P.2d 635 (Ct.App.1987). In *Armijo* we held that an agency's regulation of a mental health facility was not "operation" of a mental health facility where the agency was not involved in the actual clinical decision-making and thus Section 41–4–9 did not waive the agency's immunity. *Id.,* 108 N.M. at 618, 775 P.2d at 1335. Similarly, in *Chee Owens v. Leavitts Freight Service, Inc.,* 106 N.M. 512, 745 P.2d 1165 (Ct.App.1987), this court construed the word "operation" in Section 41–4–5 as not including the design, planning, and enforcement of safety rules for school bus transportation, and in *Adams,* 106 N.M. at 378, 743 P.2d at 637, the phrase "operation of * * * liquid waste collection or disposal" utilities in Section 41–4–8(A) was construed as not including inspection of a private sewer cleanout. In contrast, the bus driver's implementation of the regulations when letting children off the school bus was held to fall within the meaning of "operation." *Chee Owens v. Leavitts Freight Service, Inc.,* 106 N.M. at 515–16, 745 P.2d at 1168–69.

These cases compel us to conclude that "operation" should not be extended to include funding decisions by a county or the allocation or nonallocation of funds. To extend the meaning of "operation" to such activities would expose governmental bodies to potential liability for virtually every decision made, which we decline to do. *Cf. Martinez v. Kaune Corp.,* 106 N.M. 489, 492, 745 P.2d 714, 717 (Ct.App.1987) (holding that extending the waiver of immunity in Section 41–4–6 for "operation or maintenance of any building" to include state's licensing or inspection of dairy farm or food store "would circumvent the very grant of immunity provided by the Tort Claims Act"). We do not think the legislature intended to equate "providing health care services" within the meaning of Section 41–4–10 and failure to provide additional funding.

Because we conclude that the Board had no duty to provide an ambulance service under Section 5–1–1 and that decisions regarding funding are not to be considered an aspect of the "operation" of ambulance services under either that section or the Tort Claims Act, we hold that the Board's failure to continue funding the ambulance service did not constitute negligent operation of such service and thus the Board's immunity from suit was not waived under Sections 41–4–9 or 41–4–10 of the Tort Claims Act.

*CONCLUSION*

We affirm the judgment of the district court.

IT IS SO ORDERED.

MINZNER and APODACA, JJ., concur.