874 P.2d 1273

**UNISYS CORPORATION,**
**Petitioner–Appellant,**

v.

**NEW MEXICO TAXATION AND REVENUE DEPARTMENT,**
**Respondent–Appellee.**

No. 14687.

Court of Appeals of New Mexico.

April 19, 1994.

**610**

Mary E. McDonald, Sutin, Thayer & Browne, P.C., Santa Fe, for petitioner-appellant.

Tom Udall, Atty. Gen., Frank D. Katz, Sp. Asst. Atty. Gen., Taxation & Revenue Dept., Santa Fe, for respondent-appellee.

## OPINION

PICKARD, Judge.

The issue we decide today is whether the Secretary of the Taxation and Revenue Department (Secretary) is required to act on a taxpayer's claim for a refund under NMSA 1978, Section 7–1–26(A) (Repl.Pamp.1990). We hold that he is not and therefore affirm the decision of the hearing officer denying the protest of Unisys Corporation (Taxpayer).

### FACTS

By letter dated September 25, 1991, Taxpayer filed a claim for refund of gross receipts taxes paid during the reporting period from January 1988 through June 1991. On January 27, 1992, 123 days after the claim was filed, the Secretary's delegate advised Taxpayer to file a written protest to the Secretary's inaction on the refund claim by no later than February 26, 1992, and asked Taxpayer for additional information supporting its claim. Taxpayer did not file a protest prior to February 26, 1992, but did submit the requested information.

The Secretary declined to act on Taxpayer's claim when Taxpayer did not file a written protest or civil action within thirty days after 120 days had elapsed from the date the claim was filed. *See* § 7–1–26(A)(1) & (2). On October 15, 1992, Taxpayer protested the Secretary's inaction. The hearing officer determined that the Secretary had discretion to refuse to act on Taxpayer's refund claim and denied the protest. Taxpayer subsequently refiled its claim for a refund, but because of the time limitation for the filing of refund claims, *see* § 7–1–26(B), its claim for a refund of gross receipts taxes paid in 1988 was barred. Taxpayer appeals, contending that the hearing officer's determination that the Secretary could properly refuse to act on its refund claim is erroneous.

### DISCUSSION

Taxpayer's sole issue on appeal involves the interpretation of Section 7–1–26. Taxpayer specifically contends that under Section 7–1–26(A), the Secretary was required to act on its claim for refund. We will affirm the hearing officer's decision unless it is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in

accordance with the law." NMSA 1978, § 7–1–25(C) (Repl.Pamp.1990).

Section 7–1–26(A) provides, in pertinent part:

> Any person who believes that an amount of tax has been paid by or withheld from that person in excess of that for which the person was liable ... may claim a refund by directing to the secretary ... a written claim for refund.... The secretary or the secretary's delegate *may* allow the claim in whole or in part or *may* deny the claim. If the claim is denied in·whole or in part in writing, the claim may not be refiled. If the claim is not granted in full, the person, within thirty days after either the mailing of the denial of all or any part of the claim or the expiration of one hundred twenty days after the mailing of *a claim which is neither allowed nor denied,* may either:
>
> (1) direct to the secretary a written protest against the denial of, *or failure to either allow or deny,* the claim ...; or
>
> (2) commence a civil action in the district court.... (Emphasis added.)

▇ In construing the meaning of a statute, our central concern is to give effect to the intention of the legislature. *Security Escrow Corp. v. State Taxation & Revenue Dep't,* 107 N.M. 540, 543, 760 P.2d 1306, 1309 (Ct.App.1988). "In determining this intent, we look primarily to the language of the act and the meaning of the words, and when they are free from ambiguity, we will not resort to any other means of interpretation." *Id.; see also State ex rel. Helman v. Gallegos,* 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994).

Section 7–1–26(A) states that the Secretary "may allow the claim in whole or in part or may deny the claim." "[I]n interpreting statutes, the words 'shall' and 'may' should not be used interchangeably but should be given their ordinary meaning." *Thriftway Mktg. Corp. v. State,* 114 N.M. 578, 579, 844 P.2d 828, 829 (Ct.App.1992); *see also* NMSA 1978, § 12–2–2(I) (Repl.Pamp.1988). Taxpayer correctly notes that the word "may"

has been interpreted to mean "shall" "where a public officer is clothed with power in permissive form to perform an act in which the interests of the public are concerned." *State ex rel. Robinson v. King,* 86 N.M. 231, 233, 522 P.2d 83, 85 (1974); *see also Catron v. Marron,* 19 N.M. 200, 205–06, 142 P. 380, 382 (1914); *cf. Gallegos v. Trujillo,* 114 N.M. 435, 436–37, 839 P.2d 645, 646–47 (Ct.App.) (use of word "may" in statute did not mandate county to provide ambulance service), *cert. denied,* 114 N.M. 314, 838 P.2d 468 (1992). However, where "shall" and "may" have been juxtaposed in the same statute, it is usually concluded that the legislature intended different meanings. *Thriftway Mktg. Corp.,* 114 N.M. at 579–80, 844 P.2d at 829–30.

"Shall" and "may" are juxtaposed throughout Section 7–1–26. For instance, while the secretary "may" allow or deny a refund claim, the hearing officer "shall" set a written protest for a hearing. Section 7–1–26(A)(1); *see also* NMSA 1978, § 7–1–29(A) (Repl. Pamp.1990) (secretary "may" authorize a refund). Thus, under *Thriftway,* the word "may" in the sentence allowing the secretary to grant or deny a claim should be construed as permissive.

In addition, we are not persuaded by Taxpayer's reliance on *King* or *Catron.* In *King,* the Supreme Court construed as mandatory language in a statute providing that the governor "may amend the proclamation [calling for an election] ... to provide for any corrections or omissions." *King,* 86 N.M. at 233, 522 P.2d at 85 (emphasis omitted). The *King* . Court held that "[w]hether words of statutes are mandatory or discretionary is a matter of legislative intent to be determined by consideration of the purpose sought to be accomplished." *Id.* In *King,* the purpose of the amendment would have been to define the district in which the candidates would run for office, without which the election would be virtually meaningless to the voters. Under these circumstances, the seemingly permissive language was deemed to be mandatory. *Id.*

Similarly, in *Catron,* the Supreme Court held that the state highway commission had

a mandatory duty to levy an annual property tax sufficient to meet the state's obligations because of the issuance of highway bonds. The Court construed the permissive language of the statute as mandatory in order to sustain and enforce existing rights. *Catron,* 19 N.M. at 205–06, 142 P. at 382. The Court quoted from *Springfield Milling Co. v. Lane County,* 5 Or. 265, 271–72 (1874): " 'When a public officer or body has been clothed by statute with power to do an act which concerns the public interest, the execution of the power is a duty and though the phraseology of the statute may be permissive, it is nevertheless to be held peremptory.' " *Catron,* 19 N.M. at 206, 142 P. at 382.

We do not believe that the provisions in the statute at issue fall into the same category of public interest as *King* or *Catron.* Importantly, Section 7–1–26(A) contains express language indicating a legislative intent that the Secretary not be required to act on all claims and providing a specific remedy for taxpayers whose claims the Secretary does not act upon. The statute provides taxpayers with two options in cases of inaction by the Secretary. Section 7–1–26(A)(1) and (2) provides that:

> [i]f the claim is not granted in full, the person, within thirty days after ... the expiration of one hundred twenty days after the mailing of a claim which is neither allowed nor denied, may either: (1) direct to the secretary a written protest against the ... failure to either allow or deny ... the claim ...; or (2) commence a civil action.

Thus, the legislature recognized that there would be cases of inaction by the Secretary and expressly provided for them. The legislature having provided taxpayers a choice of remedies in the event that the Secretary fails to act within 120 days, we can discern no prejudice to taxpayers whose claims are not acted upon. *See State ex rel. Sun Co. v. Vigil,* 74 N.M. 766, 773, 398 P.2d 987, 991–92 (1965) (directions in statutes which are not essence of things to be done usually not considered mandatory, especially where, by failure to obey, no prejudice results to those whose rights the statute protects).

■ We agree with Taxpayer's contention that the legislature could not have intended to permit the Secretary to derail the refund claim process by simply refusing to act. Contrary to Taxpayer's argument, however, the legislature indeed provided refund claimants with means of challenging Secretarial inaction. In fact, the Secretary's delegate asked Taxpayer to file a written protest to his inaction in order to preserve its rights. In part for the same reasons, we must reject Taxpayer's contention that the hearing officer's construction of Section 7–1–26(A) vests the Secretary with unbridled discretion in deciding whether to act upon individual refund claims. The legislature has given taxpayers effective means of protesting the failure to act, means of which Taxpayer failed to avail itself even after being specifically advised to. Under the circumstances, we can see no reason to depart from the clear language of Section 7–1–26(A), giving the secretary discretion to act or refuse to act on refund claims.

There is an additional reason why we reject Taxpayer's contention that the statutory scheme, if read the way we read it, gives the Secretary unlawful, unbridled discretion to arbitrarily and capriciously refuse to act on a claim. The Secretary's brief points out that the portion of the statutes permitting him to refuse to act are part of a statutory scheme that governs the payment of interest on claims for refunds. Interest is to be paid "from the date the claim for refund was made" unless the refund is made within 120 days of the claim. NMSA 1978, § 7–1–68(C) & (D) (Repl.Pamp.1990). Our construction of the statutes allows both parties a measure of control over the delay in a case and the consequent payment of or obligation to pay interest.

The way the statutory scheme works is as follows. If a taxpayer wants to recover interest from the date of the original claim and the Secretary neither grants nor denies the claim, the taxpayer must proceed in accordance with Section 7–1–26(A)(1) or (2) and either timely protest or file the civil action. However, there may exist cases in which the

taxpayer may not wish to litigate immediately. For example, the taxpayer may not have provided the Secretary with sufficient information on which to either grant or deny the claim and may not wish to hurriedly gather the information as would be required by a timely protest or lawsuit. In such a case, the taxpayer may wish to forego the interest. Thus, when the Secretary takes no action on such a claim, the taxpayer may refile the claim. *See* § 7–1–26(A) ("If the claim is denied in whole or in part in writing, the claim may not be refiled.").

Under the statutory scheme, both the taxpayer and the Secretary are provided a method to force action by the other and obtain a timely final resolution of the claim. Although we recognize that the statutory scheme does not expressly state such a purpose, the scheme does admit of such a purpose, and such a purpose would be both reasonable and logical. Thus, the construction we have adopted is neither absurd nor apparently contrary to the legislative intent.

*See State ex rel. Helman v. Gallegos*, 117 N.M. at 353, 871 P.2d at 1359.

CONCLUSION

We believe that Section 7–1–26(A) gives the Secretary the choice of whether or not to act upon a refund claim. The statute gives taxpayers two options in the event the Secretary fails to act. Given the clear, unambiguous language of Section 7–1–26(A), and its allowance and choice of remedies, we cannot say that an individual may compel a decision on a claim for a refund without instigating one of the stated remedies. Therefore, we affirm the hearing officer's denial of Taxpayer's claim for refund.

IT IS SO ORDERED.

ALARID and FLORES, JJ., concur.