This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**JACOB and JEANNE KURIYAN**,

    Protestants-Appellants,

v.                                         **No. 35,282**

**NEW MEXICO TAXATION and**
**REVENUE DEPARTMENT**,

    Respondent-Appellee,

**IN THE MATTER OF THE PROTEST**
**OF JACOB & JEANNE KURIYAN TO**
**DEPARTMENT'S DENIAL OF REFUND**
**ISSUED UNDER LETTER ID NO. L1600681936.**

**APPEAL FROM THE TAX ADMINISTRATIVE HEARINGS OFFICE**
**Brian VanDenzen, Interim Chief Hearing Officer**

Barnett Law Firm PA
Colin Hunter
Jordy L. Stern
Albuquerque, NM

for Appellants

NM Department of Taxation & Revenue
Cordelia Anna Friedman
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**VIGIL, Chief Judge.**

{1} Protestants Jacob and Jeanne Kuriyan appeal from the decision and order, entered by the New Mexico Taxation and Revenue Department (the Department) hearing officer on December 17, 2015. [DS 1; RP 1] In this Court's notice of proposed disposition, we proposed to summarily affirm. Protestants filed a memorandum in opposition (MIO) and supplemental docketing statement (SDS), which we have duly considered. Remaining unpersuaded, we affirm.

{2} We note as an initial matter that the issues in Protestants' memorandum in opposition are not phrased as the same issues that were raised in Protestants' original docketing statement. Thus, to the extent Protestants have not responded to our notice of proposed disposition on any of the issues raised in their docketing statement, such issues are deemed abandoned. *See State v. Johnson*, 1988-NMCA-029, ¶ 8, 107 N.M. 356, 758 P.2d 306 (stating that when a case is decided on the summary calendar, an issue is deemed abandoned where a party fails to respond to the proposed disposition of the issue).

{3} **Motion to Amend:** We further note as a preliminary matter that, to the extent

the issues that Protestants have asserted in their memorandum in opposition were not raised in Protestants' original docketing statement, we construe the introduction of such issues as a motion to amend the docketing statement. *See* Rule12-208(F) NMRA. In order for this Court to grant a motion to amend the docketing statement, the movant must meet certain criteria that establishes good cause for our allowance of such amendment. *See State v. Moore*, 1989-NMCA-073, ¶¶ 41–42, 109 N.M. 119, 782 P.2d 91, *overruled on other grounds by State v. Salgado*, 1991-NMCA-044, ¶ 2, 112 N.M. 537, 817 P.2d 730; *State v. Rael*, 1983-NMCA-081, ¶¶ 15–16, 100 N.M. 193, 668 P.2d 309. "The essential requirements to show good cause for our allowance of an amendment to an appellant's docketing statement are that (1) the motion be timely, (2) the new issue sought to be raised was either (a) properly preserved below or (b) allowed to be raised for the first time on appeal, and (3) the issues raised are viable." *Moore*, 1989-NMCA-073, ¶ 42. For the reasons discussed below, we are unpersuaded by Protestants' arguments regarding equitable estoppel and due process and thus consider such issues non-viable. *See id.* ¶¶ 42–43. As such, we deny Protestants' motion to amend.

**{4}** **Equitable Estoppel:** In their memorandum in opposition, Protestants argue that the Department "should have been equitably estopped from arguing that [Protestants] missed the 210-day deadline with which to file a civil action or protest the

Department's inaction of [their] tax refund request." [MIO 2] Protestants contend that all of the requirements for equitable estoppel have been met in the present case because (1) the Department was aware of all the facts regarding Protestants' refund request; (2) the Department intended its conduct to be acted upon or so acted that Protestants had the right to believe it was so intended—here, that the basis for the denial was that the Department did not receive the correct form by the three-year statute of limitations deadline; (3) Protestants must have been ignorant of the true facts—here, that the basis for denial was the failure to comply with the 210-day deadline; and (4) Protestants reasonably relied on the Department's conduct which led to their injury—here, that Protestants were unaware of the 210-day deadline issue and did not retain counsel to properly argue in their favor. [MIO 3–4] *See Kilmer v. Goodwin (In re Protest of Kilmer)*, 2004-NMCA-122, ¶ 27, 136 N.M. 440, 99 P.3d 690 (setting forth the four elements required to establish equitable estoppel against the government, as indicated above).

{5}     The relevant facts are as follows and were identified in the hearing officer's decision and order as presented at the protest hearing through witnesses and exhibits. [*See* RP 1] On or about October 13, 2010, Protestants submitted their 2009 New Mexico PIT-1 personal income tax return and claimed a refund in overpayment of tax. [RP 3 (¶¶ 15–16)] Protestants requested that a portion of their refund be applied to

4

their estimated 2010 personal income taxes, with the remainder to be refunded to them. [RP 3 (¶ 16)] The Department received the tax return form on October 14, 2010. [RP 3 (¶ 17)] The Department took no action to approve or deny the claim for refund by February 11, 2011, which was 120 days after Protestants' filing. [RP 3 (¶ 18)] Protestants did not initiate a civil action in district court or file a protest with the Department by May 12, 2011, which was 210 days after the filing of their 2009 tax return. [RP 3 (¶ 19)]

{6}     Nearly two years later, around April 2013, Protestants realized they had not received their requested claim for refund of their 2009 taxes, so they contacted their accountant to determine what happened. [RP 4 (¶¶ 20–21)] Apparently around this same time, the Department determined that it had never received Protestants' 2008 income tax return and communicated that fact with Protestants' accountant. [RP 4 (¶ 22)] The Department suggested at the protest hearing that its failure to take action on the 2009 return stemmed from the absence of Protestants' 2008 tax return, which effectively placed Protestants' account on hold. [RP 4 (¶ 23)] Accordingly, on April 17, 2013, Protestants resubmitted their 2008 personal income tax return. [RP 4 (¶ 24)]

{7}     Between April and November 2013, Protestants' accountant called the Department three to four times to check on the status, and he apparently received verbal confirmation that all previous returns had been filed and that there were no

filing deficiencies in prior returns. [RP 4 (¶ 25)] The accountant was also never informed of the need to file an application for refund of the 2009 personal income tax. [RP 4 (¶ 25)] Sometime in December 2013, Protestants received a letter from the Department containing applications to request refunds for three separate years, including 2009. [RP 5 (¶ 26)] Protestants completed all three applications and mailed them to the Department before the end of the year. [RP 5 (¶ 27)] Protestants received refund checks for two of their applications, but did not receive a check for their application for 2009. [RP 5 (¶ 28)] The hearing officer was convinced that Protestants submitted the application for refund for 2009 before the December 31, 2013 statute of limitations expired. [RP 5 (¶ 29)] *See* NMSA 1978, § 7-1-26(D) (2015).

**{8}** Nonetheless, the Department took no action to approve or deny Protestants' application for refund within 120 days, which would have been April 23, 2014. [RP 5 (¶ 30)] *See* § 7-1-26(B)(2), (C) (stating in pertinent part that, "[i]f the department has neither granted nor denied any portion of a claim for refund within [120] days of the date the claim was mailed or delivered to the department, the person may refile it within the time limits set forth in Subsection D of this section or may within [90] days elect to pursue one, but only one, of the remedies in Subsection C of this section," which includes commencing a civil action in district court)] Despite the Department's failure to act, Protestants did not initiate a civil action in district court or file a protest

6

within 210 days, or before July 22, 2014. [RP 5 (¶ 31)] *See id.* (stating in pertinent part that, "[a]fter the expiration of the [210] days from the date the claim was mailed or delivered to the department, the department *may not* approve or disapprove the claim *unless* the person has pursued one of the remedies under Subsection C of this section," which includes directing a written protest to the secretary or filing a civil action in district court). (emphasis added). Rather, it was not until January 13, 2015, that the Department denied Protestants' claim for a refund of 2009 personal income tax, claiming as a reason that the claim was not filed within the 3-year statute of limitations. [RP 1 (¶ 1)] Thereafter, on April 9, 2015, Protestants submitted a protest to the denial, and, on April 22, 2015, the Department acknowledged receipt of such protest. [RP 2 (¶¶ 2–3)]

{9}     As acknowledged by the hearing officer, Protestants complied with the statute of limitations for filing a claim for refund for their 2009 taxes. [RP 6] However, the Department failed to take action on a claim for refund within 120 days from the claim. [RP 6–7] In such a case, as indicated above, Section 7-1-26(B)(2) provides a taxpayer 90 days within which to either file a protest or commence a civil action in district court. [RP 7] *See* § 7-1-26(B)(2). As explained by the hearing officer, "[i]n other words, in the face of Department inaction, a taxpayer has 210-days from the original filing date of the claim for refund to preserve their [sic] claim by either filing a protest

7

or a civil action." [RP 7] *See Unisys Corp. v. N.M. Taxation & Revenue Dep't*, 1994-NMCA-059, ¶ 15, 117 N.M. 609, 874 P.2d 1273 (stating that Section 7-1-26 provides the taxpayer with a method to force action and obtain a timely final resolution of the claim). If the statute of limitations had not yet run, Protestants may have also been able to file another application for refund, but it was too late to refile once the 210 days had expired. *See Kilmer*, 2004-NMCA-122, ¶ 15 (stating that, when the Department fails to act within 120 days, "the onus [is] on [the t]axpayers . . . to either file a protest or an action in district court," and if the taxpayers do neither, as in that case, it may be too late to refile).

{10}     As this Court explained in *Kilmer*,

> [t]he purpose of the time deadline in Section 7-1-26 is to avoid stale claims, which protects the Department's ability to stabilize and predict, with some degree of certainty, the funds it collects and manages. The time deadline places the burden of maintaining an active claim on the taxpayer and makes it *the taxpayer's responsibility* to confront the Department inaction. The [L]egislature has apparently allocated that responsibility to the taxpayer because it is the taxpayer who can more easily keep track of the status of a refund claim.

*Id.* ¶ 16 (emphasis added). We rejected the argument of the taxpayers in *Kilmer* that the 90-day deadline is counted from when the Department denies the claim for refund, stating that such interpretation is contrary to the plain language of the statute and legislative intent. *Id.* ¶¶ 17–20; *see also id.* ¶ 21 (providing an alternative explanation as to why such interpretation is untenable). We additionally held that the Department

8

has no implied authority to allow claims after 210 days, explaining that "an administrative agency may not exercise authority beyond the powers that have been granted[.]" *Id.* ¶ 24. In the present case, the Department likewise had no authority to allow Protestants' claim after the expiration of the 210 days. *See id.*

{11} We nonetheless consider Protestants' estoppel argument. *Kilmer* makes clear that "[e]stoppel will not be applied against a state governmental entity unless there is a shocking degree of aggravated and overreaching conduct or where right and justice demand it." *Id.* ¶ 26 (internal quotation marks and citation omitted). Indeed, "[i]n cases involving assessment and collection of taxes, the state will be held estopped only rarely [and e]stoppel *cannot lie against the state when the act sought would be contrary to the requirements expressed by statute.*" *Id.* (emphasis added) (internal quotation marks and citation omitted). Moreover, we have not been inclined to grant estoppel when the party relies on oral representations of the agency. *See id.* ¶ 28.

{12} In *Kilmer*, we held that oral statements typically do not provide a basis to apply estoppel against an agency and that a letter from the Department correctly explaining that the denial of the application was based on the fact that the statute of limitations had expired and allowing the taxpayers to protest does not provide a basis for estoppel. *See id.* ¶¶ 42, 43; *see also id.* ¶¶ 28–41 (further discussion). In the present case, there is evidence that Protestants' accountant may have followed up with the

Department over the phone about the refund claim prior to the expiration of the statute of limitations and prior to Protestants' filing their 2013 application for refund. [*See* RP 4 (¶ 25), 8] We agree with the hearing officer that "none of these statements arise to a promise or suggestion that the Department would approve the specific claim for refund[.]" [RP 10] Thus, like the taxpayers in *Kilmer*, such statements do not give rise to estoppel. *See id.* ¶¶ 39–40. Additionally, the Department's letter to Protestants indicating that the denial of the 2009 refund was based on the expiration of the statute of limitations does not provide a basis for estoppel because, like in *Kilmer*, the Department correctly explained the basis for the denial at that time.

{13}    We additionally note that, also similar to the taxpayers in *Kilmer*, Protestants were represented by an accountant. *See id.* ¶ 41. Although Protestants claim that they were ignorant regarding the 210-day deadline, the fact that they were represented by an accountant mitigates such purported ignorance. As we explained in *Kilmer*, the fact that the accountant was "a professional, capable of performing her own research" who was "able to find Section 7-1-26 and consider that Department inaction for 120 days might require her to respond to the Department's inaction," meant that the taxpayers could not rely on estoppel against the Department. *See id.* We explained that, in balancing the equities required under the doctrine of estoppel, it was not reasonable for the accountant to assume that she would not need to do anything further except

wait for the claim to be denied. *See id.*

{14} Accordingly, we hold that the Department was not permitted under statute to allow the refund after the expiration of the 210-day time frame had expired, and the limited oral statements made by the Department, prior to the Protestants' 2013 filing, do not provide a basis for estoppel. Additionally, we hold that the Department's letter of denial, which identified the statute of limitations as the basis for its denial, does not provide a basis for estoppel, particularly in light of Protestants' representation in the matter by an accountant. Moreover, as in *Kilmer*, estoppel simply "cannot lie against the state when the act sought would be contrary to the requirements expressed by statute." *Id.* ¶ 26

{15} **Due Process:** Protestants additionally argue in their memorandum in opposition that the introduction of the 210-day deadline argument was a denial of their due process rights and the New Mexico Taxpayer Bill of Rights because the taxpayer is entitled to an explanation of the basis for denials of refunds. [MIO 4–5] Protestants contend that the introduction of certain exhibits, coupled with the introduction of the 210-day deadline argument, violated their due process rights. [MIO 5] "We review the constitutional claim of denial of due process de novo." *State ex rel., Children, Youth & Families Dep't v. Pamela R.D.G.*, 2006-NMSC-019, ¶ 10, 139 N.M. 459, 134 P.3d 746.

11

{16} The Taxpayer Bill of Rights states, *inter alia*, that taxpayers have "the right to be provided with an explanation of the . . . basis for . . . denials of refunds[.]" NMSA 1978, § 7-1-4.2(F) (2003). Similarly,

> [d]ue process requires timely notice reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.

*In re Pamela R.D.G.*, 2006-NMSC-019, ¶ 12 (internal quotation marks and citation omitted). Protestants allege their due process rights were violated because they were not provided timely notice of the subject and issues involved in the proceeding. [*See* MIO 5–6]

{17} We briefly address the exhibits first. According to the decision and order, Protestants sought to exclude the Department's exhibits of Protestants' 2008, 2010, and 2011 returns because the Department did not provide copies of such exhibits to Protestants prior to the hearing. [RP 13] As the hearing officer explained, however, the exhibits are Protestants *own tax returns* in the years surrounding the claimed refund, which Protestants prepared, perhaps through an accountant, and of which Protestants presumably possessed copies. [Id.] Moreover, the introduction of such exhibits was not prejudicial to Protestants in light of the fact that they were only

12

admitted to support the Department's contention regarding why it did not act on the 2009 claim for refund. As Protestants have provided no explanation in their memorandum in opposition as to why the admission of Protestants' own tax refunds was actually prejudicial, we find no error. *See State v. Jose S.*, 2007-NMCA-146, ¶ 20, 142 N.M. 829, 171 P.3d 768 ("In the absence of prejudice, there is no reversible error." (internal quotation marks and citation omitted)).

**{18}** We therefore turn to Protestants' argument that the introduction of the 210-day deadline argument at the hearing constitutes a violation of their due process. Protestants contend that the second factor in the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), is relevant. [MIO 6] "We weigh three factors under the *Mathews* test: (1) the [taxpayer's] interest, (2) the risk to the [taxpayer] of an erroneous deprivation in light of the probable value of additional or substitute procedures as safeguards, and (3) the government's interest." *State ex rel Children, Youth & Families Dep't v. Steve C.*, 2012-NMCA-045, ¶ 13, 277 P.3d 484. We therefore consider the risk to Protestants of an erroneous deprivation in light of the probable value of additional or substitute procedures as safeguard. *See id.*

**{19}** As acknowledged by Protestants, they were initially informed that the denial of their 2009 tax refund was based on the untimeliness of their claim pursuant to Section 7-1-26. [*See* DS 6-7; *see also* RP 14] As indicated above, Section 7-1-26

13

includes both the statute of limitations for such claims and the statutory provision that, upon the Department's inaction on a claim for refund, if the taxpayer chooses not to refile a refund or if the time limits within which to do so have expired, a taxpayer may, *within ninety days*, choose to protest the inaction or file a civil action. *See* § 7-1-26(B)(2), (D). As such, the risk of deprivation to Protestants was relatively small based on the Department's purported failure to reference the 210-day deadline because, not only did our Legislature allocate the responsibility of maintaining an active claim on the taxpayer, *see Kilmer*, 2004-NMCA-122, ¶ 16, and not only is "ignorance of the law . . . no excuse" and "[e]very person is presumed to know the law," *see State v. Tower*, 2002-NMCA-109, ¶ 9, 133 N.M. 32, 59 P.3d 1264, *overruled on other grounds by State v. Archuleta*, 2015-NMCA-037, 346 P.3d 390, but Protestants were specifically directed to the statute that contains the relevant information. Moreover, as discussed above, Section 7-1-26 provides the Department with *no* authority to allow Protestants' claim after the expiration of the 210 days. *See Kilmer*, 2004-NMCA-122, ¶ 24. As Protestants were directed to Section 7-1-26, we are unpersuaded that the Department's letter violated Protestants' right to due process.

{20}      We additionally note that Protestants argue throughout their memorandum in opposition that, had they been given specific notice of the 210-day deadline argument prior to the protest hearing, they would have retained legal counsel to dispute the issue

14

and argue that the deadline did not apply in their case. [*See, e.g.*, MIO 7] However, as discussed at length above, the Department had no express or implied authority to allow Protestants' claim after the expiration of the 210 days and estoppel "cannot lie against the state when the act sought would be contrary to the requirements expressed by statute." *Kilmer*, 2004-NMCA-122, ¶¶ 24, 26. As such, we are unpersuaded that Protestants would have been able to effectively argue against the applicability of the 210-day deadline and, accordingly, "the probable value of additional or substitute procedures as safeguard" are de minimus. *See Steve C.*, 2012-NMCA-045, ¶ 13. We therefore hold that Protestants were not denied their right to due process when the Department raised the 210-day statutory deadline at the protest hearing.

{21}     Accordingly, for the reasons stated in our notice of proposed disposition and herein, we affirm.

{22}     **IT IS SO ORDERED.**


_____
**MICHAEL E. VIGIL, Chief Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**STEPHEN G. FRENCH, Judge**